UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GUY McEACHIN,
                     Plaintiff,

v.                                           9:03-CV-1516
                                                        (LEK/GJD)
GLENN S. GOORD, JR., Commissioner
of DOCS, *et al.*,
                     Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

GUY McEACHIN
Plaintiff *pro se*

ELIOT SPITZER                                        JAMIE I. ROTH
New York State Attorney General               Asst. Attorney General
Attorney for Defendants

LAWRENCE E. KAHN, U.S. District Judge

## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

In this civil rights Complaint (Dkt. No. 1), Plaintiff Guy McEachin ("Plaintiff" or "McEachin") alleges that he was denied due process during a disciplinary hearing held against him at Auburn Correctional Facility. Plaintiff seeks substantial monetary relief.

Presently before the Court is Defendants' Motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 25). Plaintiff has not responded to the motion. For the following reasons, Defendants' Motion is granted, and the Complaint is dismissed.

### II. DISCUSSION

**A. Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; Thompson v. Gjivoje, 896 F.2d 716,

720 (2d Cir. 1990) (citations omitted).  Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion.  Id.  However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  Id.  See also Burt Rigid Box v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002) (citations omitted).  However, only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment.  Salahuddin v. Coughlin, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987) (citation omitted).

**B.  Facts**

Plaintiff alleges that on June 16, 2001, he was charged in a misbehavior report with various disciplinary rule violations, including Unhygienic Act; Assault on Staff; Violent Conduct; Destruction of State Property; Interference; and Harassment.  These charges arose when Plaintiff threw liquid from a milk carton on one of the corrections officers, hitting him in the head, face, and body.  Prosser Aff., Ex. B (Dkt. No. 25, Attach. 13) (misbehavior report).  The misbehavior report states that on June 16, 2001, Corrections Officer K. Scharett was bringing food to the K-Section of the Special Housing Unit ("SHU").  Id.  When Officer Scharett was giving Plaintiff his tray, Plaintiff reached out of the "feed-up" hatch with a carton of milk.  Plaintiff threw the contents of the carton, hitting Officer Scharett.  Officer Scharett stated that the liquid smelled of sour milk and urine.  Id.

On June 26 and 29, 2001, Plaintiff was afforded a Tier III disciplinary hearing with Defendant Prosser presiding as the hearing officer.  Defendants have filed the transcript of the hearing as well as an affidavit by Defendant Prosser.  See Prosser Affid. (Dkt. No. 25, Attach. 11); Hearing Transcript, Prosser Affid., Ex. A (hereafter "HT") (Dkt. No. 25, Attach. 12).  Plaintiff was already confined in

2

SHU when he committed the conduct associated with this misbehavior report. Prior to the hearing, Plaintiff was given the opportunity to choose an employee assistant to help him obtain information in order to prepare his defense. Plaintiff's second choice was Defendant Anderson, who was assigned to be Plaintiff's employee assistant when Plaintiff's first choice was unavailable. Anderson Aff. (Dkt. No. 25, Attach. 10) at ¶ 3, Ex. A.

Plaintiff requested that Defendant Anderson assist Plaintiff in obtaining the results of any "lab tests" that were performed on the substance that was thrown on Officer Scharett. Plaintiff also asked Defendant Anderson to obtain the definitions of various terms. The form Plaintiff used to make this request and Defendant Anderson's response to the requests has been attached to Defendant Anderson's affidavit. Anderson Aff. (Dkt. No. 25, Attach. 10) at ¶ 4, Ex. B. The form indicates that no "in-house" testing was performed on the liquid, but that Plaintiff should ask the hearing officer if any samples were "sent out." Id. The form states that Defendant Anderson gave Plaintiff four pages of the dictionary definitions he requested. Id. The form also indicates that Plaintiff did not request any witnesses from Defendant Anderson, and the form was signed by both Plaintiff and Defendant Anderson on June 19, 2001. In his Complaint, Plaintiff alleges that he requested that Defendant Anderson provide him with an Unusual Incident (UI) Report; Employee Accident Report; and photos, but that Defendant Anderson told Plaintiff that these documents and photographs did not exist. Complaint (Dkt. No. 1) at ¶ 6(B).

At the hearing, Plaintiff did not deny that he threw liquid, rather Plaintiff argued with the hearing officer's interpretation of "assault," "violent" conduct, and "unhygienic acts." HT (Dkt. No. 25, Attach. 12) at 3-4, 10-11, 12-13. Plaintiff wanted to obtain the "lab reports" in order to prove that he did not throw urine on the officer and wanted to call a dietitian as a witness to show that milk was not "food." Id. at 2-3, 17-18. Defendant Prosser denied Plaintiff's request to call the dietitian, and attempted to explain to Plaintiff that the exact contents of the milk carton were not relevant to the misbehavior. Id. at 18, 22.

Officer Scharett described the incident, and testified that Plaintiff threw the contents of a milk

3

carton at him, hitting the left side of his face, his eye, and all the way from the top of his head to his foot. Id. at 16. Officer Scharett stated that he took a shower after the incident. Id. Plaintiff was given the opportunity to ask Officer Scharett questions, but declined to do so. Id.

Defendant Prosser found Plaintiff guilty of the misbehavior and explained his findings on the record. Id. at 27-28. Defendant Prosser found that Plaintiff threw liquid that "appeared to be" milk and urine on the officer's face and body so that the officer had to leave his post to clean up. Id. at 27. Furthermore, Defendant Prosser stated that the act of throwing anything on a facility employee would be considered "violent conduct" and that this type of conduct could not be tolerated in a correctional facility because of the danger of infection. Id. at 27-28. Defendant Prosser sentenced Plaintiff to 48 months in SHU[1] together with a deprivation of privileges.

Plaintiff appealed the hearing officer's decision, and Plaintiff's sentence was reduced to 24 months in SHU. Plaintiff filed various documents that he refers to as requests for "reconsideration," that were all denied.

### C.  Contentions

Plaintiff alleges that Defendants have violated his due process rights by disciplining him for "false charges;" denying him proper assistance in obtaining evidence prior to, and during, the hearing; denying him the right to call a witness at his disciplinary hearing; denying him an impartial hearing officer; and finding him guilty based on insufficient evidence.

Plaintiff also alleges that Defendants violated his right to be free from cruel and unusual punishment by sentencing Plaintiff to serve 24 months in SHU. Plaintiff alleges that the sentence was excessive. He also alleges that the supervisory officers are liable because they failed to remedy these alleged constitutional violations, despite being given several opportunities to do so when Plaintiff filed his requests for "reconsideration."

---

[1] Plaintiff was already confined in SHU at the time of this incident because of a prior disciplinary infraction.

On January 14, 2005, defense counsel took Plaintiff's deposition. A copy of the deposition transcript has been filed as Defendants' Ex. A to the Roth Affirmation. At the deposition, Plaintiff admitted that he threw the milk, however, he did not throw the milk *at the officer*. Deposition Transcript, Roth Affirm., Ex. A (hereafter "DT") (Dkt. No. 25, Attach. 7) at 10. Plaintiff stated that he was throwing it at someone in the cell next to him, and the milk "just happened" to get on the officer. Id. Plaintiff also stated that the milk may have been from "the day before." Id. at 11. Plaintiff stated that there was already a plexiglass shield on his cell at the time of this incident. Id. at 10.

### D.  Respondeat Superior

It is well-settled that in order to be held liable for damages in a section 1983 action a defendant must have been personally involved in the alleged violation. McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1087 (1978). The doctrine of respondeat superior is inapplicable to section 1983 claims. Polk County v. Dodson, 454 U.S. 312, 325 (1981); Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999).

In Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved, and thus be subject to individual liability, in a constitutional deprivation. A supervisory official is said to have been personally involved if that official "directly participated in the infraction". Id. A supervisory official is said to have been personally involved if, "after learning of a violation through a report or appeal, [he or she] failed to remedy the wrong". Id. Personal involvement of a supervisory official is said to exist if "he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue". Id. Finally, a supervisory official may be personally involved if "he or she was grossly negligent in managing subordinates who caused the unlawful condition or event". Id.

Defendants argue that Plaintiff has failed to allege the requisite personal involvement by Defendants Goord and Selsky, both supervisory officials. Plaintiff alleges that these Defendants

5

"failed to remedy the wrong" after learning of it through Plaintiff's appeal and various requests for reconsideration. Plaintiff alleges that the requests for reconsideration were sent directly to Defendant Selsky, and he failed to remedy the wrong. Defendants argue that the most involvement Defendant Selsky had with Plaintiff's case was that his "designee" reduced Plaintiff's penalty, and therefore, Defendant Selsky should not be held responsible for the other allegations.

Defendants have not submitted the papers associated with Plaintiff's appeal, thus, this Court does not know whether Defendant Selsky made the decision to reduce Plaintiff's sentence and whether Defendant Selsky reviewed Plaintiff's appeal himself or the appeal was reviewed by a "designee." If Defendant Selsky was involved in reviewing the appeal himself, and one of his actions was to reduce the penalty, that does not automatically mean that Defendant Selsky was not made aware through the appeal of other constitutional violations that he did not "remedy." Thus, this Court will not dismiss this action against Defendant Selsky based upon the lack of personal involvement.

Defendant Goord, however, is the Commissioner of the Department of Correctional Services, and in his Complaint, Plaintiff alleges only that he sent one of the requests for "reconsideration" to Defendant Goord, who "in turn designated defendant Selsky to answer." Complaint (Dkt. No. 1) at ¶ 6(H). During Plaintiff's deposition, he stated that he named Defendant Goord because he was the Commissioner and did not remedy the wrong. DT (Dkt. No. 25, Attach. 7) at 29. It has been held that when a supervisory official's only involvement with an inmate's claim is limited to forwarding correspondence to the appropriate staff member, there is insufficient personal involvement to sustain a section 1983 claim. Garvin v. Goord, 212 F. Supp. 2d 123, 126 (W.D.N.Y. 2002).

By *Plaintiff's own statement*, Defendant Goord's *only* involvement in this case was to refer Plaintiff's request for "reconsideration" to Defendant Selsky in October of *2003* (more than two years after the incident). Thus, there is insufficient personal involvement by Defendant Goord to sustain a claim for damages under section 1983, and the Complaint may be dismissed as against Defendant Goord.

6

**E.  Due Process**

In order to begin a due process analysis, the Court must determine, *inter alia*, that Plaintiff had a protected liberty interest in remaining free from the confinement that he challenges. Bedoya v. Coughlin, 91 F.3d 349, 351 (2d Cir. 1996).  In Sandin, the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

The Second Circuit has *indicated* that whether a deprivation is atypical and significant involves fact finding.  See Frasier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996) ("[t]he extensive fact-finding of the district court permits us to measure Frasier's SHU claim by the standard of *Sandin*"); Samuels v. Mockry, 77 F.3d 34, 38 (2d Cir. 1996) (assessment as to whether inmate had a protected liberty interest may require fact finding).

The Second Circuit has discussed the duration element of the Sandin analysis. Colon v. Howard, 215 F.3d 227 (2d Cir. 2000).  In Colon, the Court discussed whether it was appropriate to have a "bright line" rule regarding the maximum length of confinement in the Special Housing Unit (SHU) before a liberty interest might be created. Id.  The Court concluded that *305* days in SHU would meet the standard. Id. at 231.  Although Judge Newman believed that the Court should articulate a bright line rule, holding that any SHU confinement less than 180 days would not create a liberty interest, the panel disagreed. Id. at 234.  The Court also noted that the longest confinement in SHU that did *not* meet the atypical requirement was *101 days*. Id. at 231 (citing Sealey v. Giltner, 197 F.3d 578, 589-90 (2d Cir. 1999)).

In this case, Plaintiff was originally sentenced to 48 months in SHU.  Even after the reduction in Plaintiff's sentence, he was confined to SHU for 24 *months*.  This period of time is certainly longer than the 305 days mentioned in Colon v. Howard as creating a liberty interest.  Additionally,

7

this Plaintiff was already in SHU at the time of the incident, further extending his time in confinement. Thus, this Court would find that Plaintiff had a liberty interest in remaining free from a 24 month SHU sentence. This Court also finds that regardless of the existence of a liberty interest, this Plaintiff received all the process he was due. Although Defendants argue that Plaintiff had no liberty interest, they assume for purposes of the motion that a liberty interest did exist.

The Court notes that the Second Circuit has also held that a Sandin analysis is not necessary if the inmate received all the constitutionally required process. Bedoya, 91 F.3d at 352. In this case, regardless of the existence of a liberty interest, this Court finds that Plaintiff was afforded due process, and the Court will proceed to an analysis of the merits of Plaintiff's due process claim.

**F.  Merits**

In Wolff v. McDonnell, 418 U.S. 539, 563-64 (1974), the Supreme Court held that due process requires advance notice of the charges against the inmate, and a written statement of reasons for the disposition. The inmate should also have the ability to call witnesses and present documentary evidence, subject to legitimate safety and correctional goals of the institution. Id. Finally, the inmate is entitled to a fair and impartial hearing officer, and the hearing disposition must be supported by "some" or "a modicum" of evidence. Superintendent v. Hill, 472 U.S. 445, 455 (1985) (some evidence standard); McCann v. Coughlin, 698 F.2d 112, 121-22 (2d Cir. 1983) (fair and impartial hearing officer).

An inmate's right to assistance with his disciplinary hearing is limited. Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993). An assistant has been held to be constitutionally necessary in cases in which a plaintiff is confined in SHU, illiterate, or unable to grasp the complexity of the issues, and therefore, unable to marshal evidence and present a defense. Id. (citation omitted). In those cases, the assistant must do what the plaintiff would have done if he were able, but need not go beyond the inmate's instructions. Id.

Plaintiff first claims that the assistance that he received in obtaining evidence was insufficient. Plaintiff alleges that he met with Defendant Anderson and asked her to obtain "documentary evidence." Complaint (Dkt. No. 1) at ¶ 6(B). In the Complaint, Plaintiff specifies that the "documentary evidence" included the "unusual incident report," the "employee accident report," and photos. Id. Plaintiff claims that Defendant Anderson told him that these documents "did not exist," but Plaintiff states that he found out later that these documents "'did' exist." Id. at ¶ 6(C).

Plaintiff in this case was confined in SHU and did receive employee assistance. The Court would first point out that Plaintiff's "Assistant Form," signed both by Plaintiff and Defendant Anderson, indicates that Plaintiff did *not* request any witnesses to be interviewed. Anderson Aff. (Dkt. No. 25, Attach. 10) at Ex. B. The form also stated that Plaintiff requested "lab results" and the definitions of various terms. Id. Defendant Anderson indicated that there was no "in-house" testing done, and that Plaintiff should ask the hearing officer if he knew of any tests that might have been "sent out." Id.

The Court also points out that Plaintiff has not shown that Defendant Anderson's statement that there was no in-house testing of the substance was incorrect. Although now Plaintiff states that the unusual incident report and employee accident report "exist," there is no indication on the Assistant Form that Plaintiff asked for these documents. Plaintiff was told by Defendant Anderson that there was no "in-house" testing, and by implication, that there were no in-house "lab tests." She also told Plaintiff to ask the hearing officer about any other "tests" that might have been sent out.

Additionally, as the hearing officer pointed out, Plaintiff was *not* found guilty of throwing urine. In fact, the hearing officer's finding was that Plaintiff threw something that "appeared to be" milk and urine. The actual contents of the milk carton were irrelevant to the hearing officer's findings. Thus, Defendant Anderson's failure to obtain "lab tests," in-house or otherwise, did not make *her* assistance constitutionally inadequate. Proving that the substance did not contain urine would not have changed the hearing officer's decision, as the hearing officer attempted to tell Plaintiff several times.

9

Although due process includes a right to call witnesses, this right is also not unlimited. Alicia v. Howell, 387 F. Supp. 2d 227, 234 (W.D.N.Y. 2005) (citing Ponte v. Real, 471 U.S. 491, 495 (1985)). This right may be limited for security reasons, to keep a hearing within reasonable limits, or "on the basis of irrelevance or lack of necessity." Id. (citing, *inter alia*, Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991)). Prison officials may be required to explain, to a limited extent, the reasons for the denial of a witness. Id. (citing Ponte, 471 U.S. at 497).

In this case, Plaintiff did request a witness *at the hearing*. Plaintiff requested that a "dietician" be called as a witness. HT (Dkt. No. 25, Attach. 12) at 17. Plaintiff did not specify any particular person, instead, his rationale for calling a dietician was to attempt to show the "substance" of milk, in an attempt to show that throwing milk was not an "unhygienic act." Id. at 17-18, 19. Defendant Prosser denied Plaintiff's request because the dietician's testimony was irrelevant and unnecessary. Id. at 18, 22, 25, 28. Defendant Prosser stated that the "substance" of what was in the milk carton was not relevant to whether Plaintiff threw *something* on a corrections officer. Id. at 18. Defendant Prosser gave Plaintiff a form, denying the witness, and again stated that there was no need for someone to testify regarding the contents of the carton. Id. at 22. This Court agrees that Defendant Prosser's denial of the dietician as a witness was reasonable and was properly based upon irrelevance or lack of necessity.

Plaintiff also discussed his request for lab test results with Defendant Prosser, who stated that this information would also be irrelevant. Id. at 2-3, 7-8. Once again, this Court agrees that the content of the liquid was not relevant to the finding of guilt. Plaintiff continues to be convinced that he was found guilty of throwing a "specific substance" consisting of sour milk and urine and thus argues that he was denied due process when he was not provided with test results identifying the substance. Id. at 7-8. It is clear that the misbehavior of which he was found guilty was throwing *anything* at the corrections officer. Plaintiff does not seem to challenge the finding that something that Plaintiff threw ended up hitting the corrections officer. During his deposition, Plaintiff attempted to claim that he was throwing the liquid at another inmate and it accidentally hit the officer, although

Plaintiff did not argue this at his disciplinary hearing. Compare DT (Dkt. No. 25, Attach. 7) at 11, with HT (Dkt. No. 25, Attach. 12) at 19. At one point during the disciplinary hearing, Plaintiff stated that he did not throw anything. HT (Dkt. No. 25, Attach. 12) at 19. However, Plaintiff spent most of the hearing arguing that the hearing officer had to prove that the substance that Plaintiff threw consisted of milk and urine.

Plaintiff also claims that there was insufficient evidence to find him guilty and that Defendant Prosser was not impartial. As stated above, the constitutional standard for sufficiency of evidence is only "some" or a "modicum" of evidence. In this case, officer Scharett testified that Plaintiff threw liquid from a milk carton, that the liquid hit the officer on the left side of the body, and that he had to take a shower after the incident. Id. at 15-16. Plaintiff had the opportunity to ask the officer questions, but chose not to do so. Id. at 16. The officer's testimony that the incident occurred is at least "a modicum" of evidence sustaining the disciplinary finding.

During the disciplinary hearing, Plaintiff attempted to argue that since the officer was not hurt, Plaintiff could not be charged with, or found guilty of, "assault" or a "violent" act. He also argued that because there was no proof that the substance contained urine, he could not be charged with an "unhygienic act." Plaintiff also points to the hearing officer's statement that there was a "danger of infection" and his reference to "a deadly virus." See id. at 28. Plaintiff argues that this comment indicates that the hearing officer was finding Plaintiff guilty of throwing a substance containing urine. However, throwing spoiled milk on an officer could be considered an "unhygienic" act, and there is certainly at least a modicum of evidence to support the hearing officer's finding that Plaintiff's conduct in throwing the liquid was "unhygienic."

Defendant Prosser attempted to explain to Plaintiff that the officer need not have been "hurt" in order to find Plaintiff guilty of assaulting the officer by throwing something at him. Additionally, Defendant Prosser also stated that throwing *anything* on an employee is considered "violent," and that this type of behavior would not be tolerated. Id. at 18, 22, 24, 27-28. One of the reasons that throwing things on corrections officers would not be tolerated was that there was a danger of

11

infection. This danger was not necessarily present with the substance that Plaintiff threw, however, condoning this type of behavior creates that danger in general. Thus, this Court finds that the evidence in Plaintiff's case was constitutionally sufficient.

Plaintiff also attempts to claim that Defendant Prosser was not impartial because he stated that he did not need test results to find him guilty of the charges. Plaintiff argues that this shows that Defendant Prosser "prejudged" Plaintiff's case. Plaintiff's interpretation of this statement is incorrect. Defendant Prosser was merely stating that the content of the liquid was irrelevant to any guilty finding, a statement that he made throughout the hearing and still maintains. Prosser Aff. (Dkt. No. 25, Attach. 11) at ¶ 4. Thus, the comment that he could find Plaintiff guilty without test results did not indicate bias or prejudice and did not show that Defendant Prosser had prejudged the case.

This Court notes that Plaintiff also mentions that Defendant Prosser violated various state law regulations requiring a hearing officer to provide witnesses and documentary evidence. Although the Court makes no finding in this regard, it must note that violations of state law alone do not necessarily rise to the level of constitutional violations. See Young v. County of Fulton, 160 F.3d 899, 902 (2d Cir. 1998) (violation of state law is *not the "benchmark"* for determining whether a constitutional violation has occurred).

### G. Eighth Amendment

Plaintiff also alleges that his SHU confinement rose to the level of cruel and unusual punishment. Restraints on an inmate do not violate the Eighth Amendment unless they are "totally without penological justification," are "grossly disproportionate," or "involve the unnecessary and wanton infliction of pain." Horne v. Coughlin, 155 F.3d 26, 31 (2d Cir. 1998) (quoting Smith v. Coughlin, 748 F.2d 783, 787 (2d Cir. 1984)). See also Dixon v. Goord, 224 F. Supp. 2d 739, 748 (S.D.N.Y. 2002). Plaintiff in this case appears to claim that the length of the SHU sentence was disproportionate to the misbehavior of which he was found guilty. Complaint (Dkt. No. 1) at Second Cause of Action. During Plaintiff's deposition, he stated that he believed the 24 month sentence was

excessive because he only received 75 days for throwing food at Five Points Correctional Facility. DT (Dkt. No. 25, Attach. 7) at 31.

This Court does not find that the reduced sentence of 24 months SHU in this case is disproportionate to the charges of which Plaintiff was found guilty, regardless of the contents of the milk carton. The record indicates that at the time of this incident, Plaintiff already had a plexiglass shield placed on his cell. Id. at 10-11. The fact that Plaintiff admits that he previously threw food and was disciplined with 75 days in SHU at Five Points Correctional Facility clearly shows that a shorter period of confinement did not stop Plaintiff from engaging in this conduct.[2] In his affidavit, Defendant Prosser states that he originally imposed the 48 months because Plaintiff was already in SHU for another violation when this incident occurred, and Defendant Prosser believed that a shorter sentence would not deter future violations. Prosser Aff. (Dkt. No. 25, Attach. 11) at ¶ 9. The sentence was later reduced to the 24 months that Plaintiff actually spent in SHU for these violations. This Court finds that the sentence ultimately imposed on Plaintiff was not excessive, and his Eighth Amendment claim may be dismissed.

### III. CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendants' Motion for summary judgment (Dkt. No. 25) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED IN ITS ENTIRETY**; and it is further

---

[2] Plaintiff appears to believe that the length of the sentence was further support for his claim that the hearing officer specifically found that Plaintiff was guilty of throwing a substance that contained *urine* since Plaintiff threw *food* at Five Points and only received 75 days SHU confinement. DT (Dkt. No. 25, Attach. 7) at 31.

13

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:   September 29, 2006
         Albany, New York

_Lawrence E. Kahn_
Lawrence E. Kahn
U.S. District Judge